UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20048-BLOOM/Elfenbein

NATACHA JEAN-FRANCOIS,

    Plaintiff,

v.

THE CITY OF NORTH MIAMI,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant the City of North Miami's Motion to Dismiss ("Motion"), ECF No. [16], filed on February 19, 2025. Plaintiff Natacha Jean-Francois filed a Response, ECF No. [24], to which Defendant filed a Reply. ECF No. [25]. The Court has reviewed the record, the Response, the Reply, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

**I.    BACKGROUND**

Plaintiff filed the instant action against Defendant on January 6, 2025. ECF No. [1]. Although it is unclear how many causes of action Plaintiff brings against Defendant, Plaintiff asserts that her Complaint is "for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964" and that the "lawsuit is brought pursuant to 42 U.S.C. § 1983 to enjoin, declare unconstitutional, and recover damages for the alleged deprivation of [her] constitutional rights under the Fourteenth Amendment[.]" *Id.* at 7.

For purposes of the Motion, the Court accepts the following allegations in the Complaint as true. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1081 (11th Cir. 2002). Plaintiff is a Haitian-American woman who worked as a Crisis Intervention

Specialist-Victim Advocate for the City of North Miami's Police Department since January 24, 2011. ECF No. [1] at 7. For ten years Plaintiff had "no unsatisfactory performance reviews, no discipline, and multiple written commendations[.]" *Id.* However, after "complain[ing] about being physically attacked at work and harassed on February 12, 2021 by two on-duty North Miami police officers," Defendant began retaliating against her. *Id.* at 8. Defendant "failed to take effective remedial action when [she] complained of the harassment and hostile environment" and, as a result of her complaint, she was subjected "to stricter scrutiny" than her coworkers, ultimately leading to her termination on February 6, 2023. *Id.*

From February 2021 to November 2022, Defendant "encouraged and fostered a hostile work environment" where she was "subjected to threatening behavior by [her] colleagues and supervisors, physical attack, [and] derogatory comment[s,]" including "untrue write-ups back to back over (untrue) allegations." *Id.* One of the police officers who attacked her on February 12, 2021 stated Plaintiff was "sticking with [her] own kind, the Haitians[.]" *Id.*

Following Plaintiff's wrongful termination, Defendant "has refused to comply with its own policy regarding terminating an employee, thereby violating [her] due process, and depriv[ing] [her] of [her] constitutional rights." *Id.* After she was terminated on February 6, 2023, Plaintiff timely filed an appeal before the City's Personnel Board and "requested a hearing for that retaliatory termination . . . in accordance with the City's Appeal Proceedings." *Id.* at 9. Defendant interfered with and deprived her of her right to due process by violating Defendant's own rules regarding personnel hirings, terminations, appeals, and other matters governing employment. *Id.* at 10. Defendant failed to schedule the appeal hearing within 60 days of the submission of her appeal. *Id.* Despite making "several requests" that Defendant "comply with the Appeal Proceeding process," Defendant "repeatedly and continuously refused to comply with its duties under the Rules" and told her on March 27, 2023 "to take them to court." *Id.* at 11. "During the time

[Defendant] refused to hold the Appeal hearings," Defendant "hired someone of its choosing as a replacement" for Plaintiff. *Id.* at 14.

The appeal hearings were ultimately held over the course of six days from June 26, 2023 to October 16, 2023. *Id.* at 12. At the conclusion of the hearings, the Personnel Board voted unanimously that Plaintiff would "be reinstated with full back pay and returned to an equivalent vacant position in the City with equivalent pay, benefits, and other terms and conditions of employment." *Id.* at 26. The Personnel Board stated that "[i]f an equivalent vacant position is not available" Plaintiff "is to be returned to her original Job Classification of a Crisis Intervention Specialist in the City of North Miami Police Department." *Id.*

Despite Plaintiff's multiple written requests, Defendant failed to "send all equivalent vacant positions so that [she] could make a selection comparable" to her prior position. *Id.* at 13. Instead, Defendant "handpicked a non-equivalent Secretarial position, and then told [her] that if [she] didn't accept that position [she] will not be reinstated or allowed to return to work." *Id.* On November 15, 2023, Defendant told Plaintiff that she would not be reinstated to her prior position and would only be given back pay if she agreed to "work in a lesser role[,] [a] secretarial position[.]" *Id.* Plaintiff alleges that this constitutes a violation of the Personnel Board's order. *Id.* at 14.

On December 7, 2023, Defendant "issued a misguided Retro Check," which included backpay from February 6, 2023 to November 2023 and was "miscalculated[.]" *Id.* Defendant "refused to discuss [Plaintiff's] grievances in good faith in violation of its own grievance procedures." *Id.* Plaintiff alleges Defendant refused to pay her accumulated vacation and sick time, her vested retirement funds, or supplemental life insurance, which she had been paying into since 2011. *Id.* at 15. On May 3, 2024, Plaintiff received another certified letter from Defendant advising that it owed her an additional 39.78 hours of sick leave pay, although Plaintiff states that Defendant

used the incorrect hourly wage to calculate the amount owed. *Id.* Plaintiff states Defendant continues to deny her "the right to collect the full amount of wages/back-pay, benefits owed and reinstatement by a lawful order." *Id.*

On April 24, 2024, an investigator from the U.S. Equal Employment Opportunity Commission ("EEOC") issued a letter for EEOC Number 510-2022-07920 stating that, based on the investigator's review of the evidence obtained during the investigation, the North Miami Police Department "did commit retaliatory harassment and termination" after Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations and the EEOC. *Id.* at 37. Defendant was given an opportunity to respond to the letter. *Id.* On July 8, 2024, the EEOC issued its letter of determination stating, "the evidence obtained establishes reasonable cause to believe that [Plaintiff] was subjected to a hostile work environment, disciplinary actions, suspension, and termination as alleged, in violations of Title VII of the Civil Rights Act of 1964, as amended." *Id.* at 39. On August 8, 2024, the EEOC determined that it would not bring a lawsuit and issued a Notice of Right to Sue. *Id.* at 43.

In the Motion, Defendant argues that the Complaint must be dismissed because: (1) it constitutes an impermissible shotgun pleading; (2) Plaintiff fails to plead a cause of action under Section 1983; (3) Plaintiff fails to state a claim for discrimination; (4) Plaintiff fails to state a claim for hostile work environment; (5) Plaintiff fails to state a claim for retaliation under Title VII; and (6) Plaintiff's Title VII claims are barred as untimely. ECF No. [16]. Plaintiff responds that her Complaint is not a shotgun pleading, she has stated a cause of action under Section 1983, provided evidence of discrimination, and she received a subsequent Notice of Right to Sue, which extended the 90-day deadline for her to file suit. ECF No. [24].

## II. LEGAL STANDARD

### A. Motion to Dismiss

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-cv-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b) motion to dismiss, the Court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

It is well-settled that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

### B. Shotgun Pleadings

"While the pleadings *of pro se* litigants are 'liberally construed,' *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010). Complaints that violate either Federal Rule of Civil Procedure 8(a)(2)'s requirement of a "short and plain statement" or Rule 10(b)'s requirement that claims or defenses are stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," or both, are often referred to as "shotgun pleadings." *Doe v. Norwegian Cruise Lines, LTD*, 744 F. Supp. 3d 1300, 1307 (S.D. Fla. 2024) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)).

As the Eleventh Circuit explained in *Weiland*, there are four ways a complaint may be found to be a shotgun pleading. *See* 792 F.3d at 1321-23. "The most common type [of shotgun pleading] . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* at 1321. The second type is a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third type is where the plaintiff does "not separat[e] into a different count each cause of action or

claim for relief." *Id.* at 1323. "Fourth and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The "central problem" with shotgun pleadings is that they do not establish a connection between "the substantive count and the factual predicates[.]" *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). As a result, "courts cannot perform their gatekeeping function with regard to the averments of [the plaintiff's claim]. It is not that we know that plaintiffs cannot state a claim but rather that we do not know whether they have." *Id.* at 1279-1280. Accordingly, shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009).

### III. DISCUSSION

Defendant argues the Complaint "purports to allege, in a single count, that the City terminated her employment in violation of the United States Constitution and Title VII" and, as a result, "commits 'the sin of not separating into a different count each cause of action or claim for relief.'" ECF No. [16] at 3 (quoting *Weiland*, 792 F.3d at 1323). As Defendant points out, the Complaint "neglects to separate its counts or causes of action, despite seeking relief under multiple legal theories." *Id.* Indeed, Plaintiff appears to bring claims under both Title VII and Section 1983, although it is unclear which facts pertain to which claim. ECF No. [1] at 7. Plaintiff responds that she "specifically identified the actions of Defendant and how those actions are wrongful." ECF No. [24] at 4. However, as Defendant correctly contends, Plaintiff "does nothing to delineate her claims." ECF No. [25] at 1.

The Complaint is primarily formatted as a narrative, entitled "General Facts." ECF No. [1] at 9. Although Plaintiff references statutes and potential causes of action, such as Title VII, Section

7

1983, "discrimination," "retaliation," "breach of contract," "due process," "hostile work environment," and "disparate treatment," none of those purported claims are organized or clearly delineated as separate causes of action. *Id.* at 7, 8, 10, 11. Plaintiff "generally alleges that she was discriminated against on the basis of her National Origin (being of Haitian descent), and that she was retaliated against for reporting harassment[.]" ECF No. [24] at 4-5. Although Plaintiff has described the nature of the discrimination, she fails to separate the allegations by cause of action so as to allow Defendant to "discern what [Plaintiff] is claiming and frame a responsive pleading[.]" *Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). "Separate legal theories of discrimination must be separated into different counts." *Hernandez v. Careersource Palm Beach Cnty., Inc.*, No. 22-cv-81149, 2023 WL 4348864, at *2 (S.D. Fla. May 4, 2023), *report and recommendation adopted*, No. 22-cv-81149, 2023 WL 4042012 (S.D. Fla. June 16, 2023). Because the Complaint does "not separat[e] into a different count each cause of action or claim for relief[,]" the Complaint must be dismissed as the third type of shotgun pleading identified in *Weiland*. 792 F.3d at 1323.

To the extent that Plaintiff asserts claims under Title VII, Defendant argues the claims would all be time-barred because she received a Notice of Right to Sue on August 8, 2024, giving Plaintiff "until November 6, 2024 to file suit based on the claims in the charge. However, Plaintiff filed her Complaint on January 6, 2025, approximately two months after the statutorily mandated deadline." ECF No. [16] at 17. "EEOC regulations implementing Title VII prescribe a system of administrative remedies a federal employee must exhaust before bringing suit in federal court." *Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 174 (11th Cir. 2024). "Before instituting a Title VII action in federal district court, a private plaintiff must . . . receive statutory notice from the EEOC of . . . her right to sue the respondent named in the charge." *Burnett v. City of Jacksonville, FL*, 376 F. App'x 905, 906 (11th Cir. 2010) (quoting *Forehand v. Fla. State Hosp.*

8

*at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996)). A plaintiff must also "generally allege in [her] complaint that all conditions precedent to the institution of the lawsuit have been fulfilled." *Id.* (quoting *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)).

Plaintiff alleges that she received a Notice of Right to Sue from the Department of Justice on October 10, 2024, ECF No. [1] at 17. However, the exhibits attached to the Complaint show that she first received a Notice of Right to Sue from the EEOC on August 8, 2024. *Id.* at 43 (letter signed on August 8, 2024 stating "[t]he issuance of the enclosed Notice of Right to Sue concludes the processing of this charge by the Commission.") The subsequent Notice of Right to Sue from the Department of Justice does not revive the limitation period. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1341 (11th Cir. 2017). Although the October 10, 2024 letter is titled "Notice of Right to Sue Within 90 Days," it does not reference any authority which would grant the Department of Justice the authority to issue a new Notice of Right to Sue. ECF No. [1] at 44. Plaintiff argues that "[i]n certain situations, an individual could receive a Notice of Right to Sue from both the EEOC and the U.S. Department of Justice Civil Rights Division, particularly when the case involves a state or local government employer and the EEOC refers the case to the DOJ[.]" ECF No. [24] at 11. However, the Eleventh Circuit has stated that EEOC regulations "contemplate[] the issuance of a new notice of the right to sue only when the original notice was revoked, which means that the regulation does not allow the Department of Justice to issue a new notice of the right to sue when the original notice was not revoked." *Stamper*, 863 F.3d at 1340. Given *Stamper*'s holding and the fact that Plaintiff has not alleged that her original Notice was revoked, nor has she cited to any Eleventh Circuit case law to support that the issuance of a second

Case No. 25-cv-20048-BLOOM/Elfenbein

Notice of Right to Sue would extend the limitations period, Plaintiff is precluded from bringing any Title VII claims based on the actions alleged in EEOC Charge Number 510-2022-07920.[1]

To the extent Plaintiff asserts claims under Section 1983, Defendant argues that Plaintiff "fails to plead the necessary threshold element of a constitutional injury resulting from a custom or policy of deliberate municipal indifference." ECF No. [16] at 4. In *Monell v. Department of Social Services of the City of New York*, the United States Supreme Court held that local governments could be sued under Section 1983 "for monetary, declaratory or injunctive relief" where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). The Supreme Court also stated that "local governments, like every other [Section] 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. Plaintiff argues that "the Mayor and the City Manager failed to enforce [their] own Personnel Board's Order of Plaintiff's Reinstatement, despite having knowledge of the non-compliance and the wrongful INACTIVATION of the Plaintiff's employment[.]" ECF No. [24]. Even if the Mayor and City Manager failed to enforce the Personnel Board's order, only the City of North Miami is

---

[1] Based on the exhibits attached to the Complaint, it appears that Plaintiff filed two complaints with the EEOC, numbered 510-2021-02724 and 510-2022-07920. *See* ECF No. [1] at 37-44. The timeline for EEOC Charge Number 510-2021-02724 is unclear and Plaintiff does not distinguish between her EEOC Charges in the Complaint. ECF No. [1] at 8, 15, 16, 17. Although Plaintiff included letters of determination from the EEOC for both cases, both of which were dated July 8, 2024, the only EEOC-issued Notice of Right to Sue is for number 510-2022-07920. *Id.* at 39-43. Because Plaintiff does not state which allegations are associated with which EEOC charge number or whether the October 10, 2024 letter was the first Notice of Right to Sue that she received in connection with charge number 510-2021-02724, it is not possible to determine on the face of the Complaint whether any Title VII claims are timely. Because Plaintiff has the burden to establish the conditions precedent to bringing suit and she has failed to do so, the Title VII claims must be dismissed for failure to state a claim. *Burnett*, 376 F. App'x at 906-907.

10

named as a Defendant in the present action and "[a] municipality can be found liable under [Section] 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

Plaintiff alleges that "since the wrongful termination, [Defendant] has refused to comply with its own policy regarding terminating an employee, thereby violating [Plaintiff's] due process[.]" ECF No. [1] at 8. Specifically, Plaintiff asserts her due process right was violated by Defendant's failure to schedule an "appeal hearing within the required time frame in violation of [Defendant's] own grievance and appeals policy." *Id.* at 10. Plaintiff alleges that pursuant to Civil Rule XIII, Section A ('SEPARATION AND SUSPENSIONS'), timeliness means that [Defendant] must hold the hearing within sixty calendar days of submission of [an] appeal." *Id.* Plaintiff asserts Defendant "continued to delay the appeal hearing despite [her] several requests for it to comply with the Appeal Proceeding process" and that the first hearing was not held until June 26, 2023. *Id.* at 11-12. As Defendant correctly points out, these facts do not "indicat[e] a 'custom or policy' of any kind." ECF No. [25] at 4. "A single incident would not be so pervasive as to be a custom or practice." *Grech v. Clayton Cnty., Ga.* 335 F.3d 1326, 1330 n. 6 (11th Cir. 2003) (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality)). Therefore, to the extent Plaintiff's Section 1983 claim is based on Defendant's failure to hold a hearing within the required time frame, she has failed to state a claim which would support Section 1983 liability.

IV.   **LEAVE TO AMEND**

The Eleventh Circuit has instructed district courts that, "[b]efore dismissing a complaint with prejudice on shotgun-pleading grounds," the court "must first explain how the pleading violates the shotgun-pleading rule and give the plaintiff at least one opportunity to re-plead the complaint." *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018). Accordingly, Plaintiff will be granted the opportunity to file an Amended Complaint, in compliance with this Order. If

Case No. 25-cv-20048-BLOOM/Elfenbein

Plaintiff chooses to file an Amended Complaint, she must comply with the Federal Rules of Civil Procedure, as described above.

V.  **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [16]**, is **GRANTED;**

2. The Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE;**

3. Plaintiff may file an Amended Complaint on or before **May 27, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 12, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Natacha Jean-Francois
1096 NW 127th Street
North Miami, FL 33168