UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20048-BLOOM/Elfenbein

NATACHA JEAN-FRANCOIS,

     Plaintiff,

v.

THE CITY OF NORTH MIAMI,

     Defendant.

_____/

## ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendant the City of North Miami's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"), ECF No. [67]. Plaintiff Natacha Jean-Francois filed a Response, ECF No. [68], to which Defendant filed a Reply. ECF No. [69]. The Court has reviewed the Motion, the Response, the Reply, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

## I.   BACKGROUND

Plaintiff filed a Second Amended Complaint ("SAC")[1] against Defendant alleging employment discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964. ECF No. [63] ¶ 1. Plaintiff alleges that she is a Haitian-American female employed by the City of North Miami's Police Department as a Crisis Intervention Specialist/Victim Advocate. *Id.* ¶ 4. She was employed from January 24, 2011, to February 6,

---

[1] Plaintiff filed the instant action against Defendant on January 6, 2025. ECF No. [1]. On May 13, 2025, the Court dismissed the Complaint without prejudice and with leave to file an Amended Complaint. ECF No. [28]. Plaintiff filed an Amended Complaint, ECF No. [38], which the Court dismissed with prejudice. ECF No. [54]. The Court thereafter granted Plaintiff's Motion for Reconsideration and permitted Plaintiff to file a Second Amended Complaint to assert only her Title VII claims. ECF No. [59]. Plaintiff thereafter filed a Second Amended Complaint. ECF No. [63].

2023. *Id.* From January 2011 to February 2021, she received no unsatisfactory performance reviews, no discipline, and received multiple written commendations for her work. *Id.* ¶ 15. On February 12, 2021, Plaintiff was physically attacked and harassed at work by two on-duty North Miami Police Officers, Detective Kamesha Moffatt and Detective Kimberly Bonny. *Id.* ¶ 16. Plaintiff filed complaints regarding the incident with the City, the Florida Commission on Human Relations ("FCHR"), and the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 17. After she complained about the February 12, 2021, incident, Defendant commenced "a pattern and practice of discrimination and retaliation against her." *Id.* ¶ 18.

Plaintiff filed two EEOC Charges, EEOC Charge No. 510-2021-02724, filed on November 2, 2021 ("November 2021 Charge"), and EEOC Charge No. 510-2022-07920, filed on November 14, 2022 ("November 2022 Charge"), alleging discrimination based on race, sex, national origin, age, and retaliation. *Id.* ¶¶ 6-7. On July 8, 2024, the EEOC issued Letters of Determination for both EEOC Charges finding reasonable cause to believe violations of Title VII occurred. *Id.* ¶ 8. On October 10, 2024, the U.S. Department of Justice, Civil Rights Division, issued a Notice of Right to Sue regarding the November 2021 Charge and the November 2022 Charge. *Id.* ¶ 12. Plaintiff filed the Complaint on October 10, 2024, eighty-eight (88) days after receiving the Notice of Right to Sue. *Id.* ¶ 13.

Regarding the November 2021 Charge, Plaintiff alleges the Charge covers harassment and a hostile work environment created by colleagues and supervisors including physical attacks and threatening behavior from November 1, 2020, to October 19, 2021. *Id.* ¶¶ 19-20. Detective Kimberly Bonny, an officer involved in the February 12, 2021, incident, made a discriminatory comment that Plaintiff was "sticking with [her] own kind, meaning Haitians." *Id.* ¶ 21. After Plaintiff complained about the incident and ongoing harassment, Defendant began subjecting her to disparate disciplinary treatment, including disciplinary write-ups with suspensions starting in

2021. *Id.* 22. Plaintiff states she had no prior disciplinary history for over ten years of employment, and the write-ups were based on pretextual grounds. *Id.* ¶ 23. Plaintiff alleges Defendant subjected her to different terms and conditions of employment based on her Haitian national origin, including subjecting her to stricter scrutiny and harsher discipline than similarly situated employees outside her protected class. *Id.* ¶ 24.

Regarding the November 2022 Charge, Plaintiff alleges that Defendant created and maintained a hostile work environment where Plaintiff was subjected to threatening behavior, derogatory comments about her Haitian heritage, false accusations of policy violations, and escalating disciplinary actions from February 1, 2021, to November 8, 2022. *Id.* ¶¶ 25, 27. Plaintiff received multiple disciplinary write-ups consisting of reprimands and suspensions without pay, including suspension of 32 hours, 30 hours, 80 hours, and others. *Id.* ¶ 28. The write-ups were pre-textual and based on false allegations of insubordination and policy violations. *Id.* ¶ 29. Plaintiff was subjected to more severe discipline than similarly situated employees outside her protected class who committed similar or more serious policy violations. *Id.* ¶ 30. Defendant's notice of intent to discipline, suspend, and terminate her employment were issued in retaliation for Plaintiff filing discrimination charges with FCHR and EEOC. *Id.* ¶ 31. Defendant's officials and attorneys threatened adverse employment actions to coerce Plaintiff into accepting the terms of a "Last Chance Agreement," withdrawing her discrimination complaints, and waiving her legal rights in order to keep her job. *Id.* ¶ 32. In July and August 2022, Police Chief Larry Juriga denied Plaintiff's training request to renew her Victim Services Practitioner Certificate, which is required for her position. *Id.* ¶ 33. On August 4, 2022, Chief Juriga hosted a ceremony to recognize departments and employees and deliberately excluded Plaintiff from recognition. *Id.* ¶ 34. On April 8, 2022, Defendant issued a Notice of Intent to Terminate Plaintiff's employment. *Id.* ¶ 35. Plaintiff was terminated on February 6, 2023. *Id.* ¶ 36. Plaintiff alleges the disciplinary actions, suspensions,

and termination were motivated by Plaintiff's national origin and in retaliation for filing charges with FCHR and EEOC.

Plaintiff asserts three violations of Title VII of the Civil Rights Act: National Origin Discrimination (Count I), Retaliation (Count II), and Hostile Work Environment (Count III). ECF No. [63]. Defendant's Motion argues the SAC fails to state a claim and several of Plaintiff's claims are time barred. ECF No. [67]. Plaintiff responds that she has properly pled each claim and the Court has already ruled that her claims are timely. ECF No. [68].[2]

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-cv-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

---

[2] Plaintiff's Response includes arguments regarding Section 1983 claims and pending charges. ECF No. [68] at 11-18. The Court does not consider those arguments because neither the Motion to Dismiss nor the Second Amended Complaint discusses Section 1983 or pending charges.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b) motion to dismiss, the Court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

It is well-settled that:

> where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

## III.   DISCUSSION

### A.  Claims Regarding February 12, 2021 Attack

Defendant argues that Plaintiff is barred from bringing claims regarding Detective Bonny's alleged attack on February 12, 2021, because Plaintiff failed to timely file suit after the EEOC dismissed her previous charge. ECF No. [67] at 13. Defendant points out that Plaintiff filed a Charge of Discrimination, Charge No. 15D-2021-00451, with FCHR and EEOC on April 5, 2021 ("April 2021 Charge"), asserting she was "almost attacked by Moffat and Bonny when they

aggressively approached [her], like an ambush to intimidate [her]." *Id.* at 13-14. The EEOC adopted the FCHR's determination that there was no reasonable cause, dismissed the April 2021 Charge, and issued a Notice of Right to Sue on April 28, 2022. *Id.* at 14. The EEOC dismissal and Notice of Right to Sue were never revoked, and the Department of Justice did not take any action with respect to the April 2021 Charge. *Id.* at 14-15. Defendant argues that because Plaintiff failed to bring a lawsuit based on her April 5, 2021 Charge within 90 days of the Notice of Right to Sue, Plaintiff is prohibited from relying on those claims in this suit, which was filed over two years later. *Id.*

Plaintiff responds that Defendant is asking the Court to reverse its previous ruling in this case. ECF No. [68] at 3-4. Plaintiff argues the Court already ruled that Plaintiff's Title VII claims are timely filed in its December 30, 2025 Order. *Id.* (referring to ECF No. [59]). The EEOC issued a Notice of Right to Sue on October 10, 2024, and Plaintiff filed suit 88 days later. *Id.* Plaintiff asserts that order is binding on this case and that there are no extraordinary circumstances for the Court to revisit its prior ruling. *Id.* at 4.

Defendant replies that the Court's prior ruling concerned the October 10, 2024 Notice of Right to Sue, which was tied to the charges where the EEOC issued reasonable cause determinations. ECF No. [69] at 1. Defendant is not challenging those charges. *Id.* at 2. Rather, Defendant argues that Plaintiff did not timely file suit within 90 days of the EEOC's Right to Sue Notice based on the April 2021 Charge and FCHR's no-reasonable-cause determination. *Id.* at 3.

In order to bring a claim under Title VII, a plaintiff must first file a complaint with the EEOC and receive statutory notice from the EEOC of her right to sue the respondent named in the charge. *Burnett v. City of Jacksonville, FL*, 376 F. App'x 905, 906 (11th Cir. 2010) (quoting *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996)). Plaintiff

must then file suit within ninety days of receipt of the right to sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000).

The failure to file suit within ninety days is not a jurisdictional prerequisite. *See Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1007 (11th Cir. 1982) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)). Rather, failing to comply with the filing period is a requirement that is subject to waiver and equitable tolling that a defendant may assert as a defense. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *see also Mohasco*, 447 U.S. at 811 n.9 ("Petitioner did not assert respondent's failure to file the action within 90 days as a defense.").

The U.S. Supreme Court has equated Title VII filing requirements to a statute of limitations. *See Zipes*, 455 U.S. at 393 ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Under Fed. R. Civ. P. 8(c), statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c). A statute of limitations defense may be raised at the motion to dismiss stage when "the complaint shows on its face that the limitations period has run." *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *see also Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013) ("A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred because a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint.") (internal quotations omitted; alterations adopted). Therefore, at the pleading stage, "it suffices to allege generally that all conditions precedent have occurred or been performed." *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010).[3]

---

[3] This Court's previous order identified the burden to establish whether conditions precedent to suit have been fulfilled: plaintiff must allege generally that conditions precedent have occurred, defendant must deny

The Court agrees with Defendant that the Court's December 30, 2025 Order does not preclude Defendant's untimeliness argument. The Court's December 30, 2025 Order clarified that Plaintiff's First Amended Complaint was dismissed because Plaintiff did not allege sufficient facts to determine whether her Title VII claims were timely. *See* ECF No. [59] at 8. However, the Court does not address Defendant's argument regarding timeliness at this stage of the proceedings because those arguments are an affirmative defense.[4] *See Zipes*, 455 U.S. at 393.

Thus, dismissal at this stage is warranted only if it is clear from the face of the SAC that Plaintiff did not timely file suit. *See AVCO Corp.*, 676 F.2d at 495. Defendant does not challenge the timing of Plaintiff's suit based on the November 2021 Charge and the November 2022 Charge. *See* ECF No. [67]. The SAC does not allege facts regarding an earlier charge. *See* ECF No. [63]. Therefore, on the face of the SAC, Plaintiff has alleged that she timely filed suit based on the November 2021 and November 2022 Charges and is not required to negate Defendant's arguments regarding the timeliness of claims brought in a charge not identified in the SAC. *See Lindley*, 515 F. App'x at 815. Therefore, Defendant's Motion to Dismiss Plaintiff's claims on the basis of untimely filing is denied at this point.

**B. Failure to State a Claim**

**1. Count I—Discrimination Based on National Origin**

Defendant argues Plaintiff fails to state a claim of discrimination based on national origin because Plaintiff does not establish direct or circumstantial evidence sufficient to meet the legal

---

a condition precedent with particularity, and plaintiff must then prove the conditions precedent have been satisfied. *See* ECF No. [54] at 8-9. This burden shifting framework applies when assessing the complaint on the merits, not on a motion to dismiss. *See, e.g.*, *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010) (applying the burden-shifting framework in a post-judgment appeal).

[4] Defendant relies on *Callahan v. Emory Healthcare, Inc.*, No. 1:21-CV-1367-WMR-JSA, 2023 WL 2334987, at *3 (N.D. Ga. Feb. 16, 2023), *aff'd*, No. 23-10604, 2024 WL 3027684 (11th Cir. June 17, 2024), to support dismissal of Plaintiff's claims. However, *Callahan* does not support dismissal at this stage because the case was decided at summary judgment.

standard of discrimination. ECF No. [67] at 3. Defendant argues the only direct evidence of discrimination is that one detective stated Plaintiff was "sticking with [her] own kind, the Haitians." *Id.* at 4. Plaintiff also does not identify a proper comparator under the *McDonnell Douglas* framework. *Id.* at 4-5. Moreover, Plaintiff does not allege a convincing mosaic theory of discrimination because the SAC does not connect the only comment made related to Plaintiff's national origin to her termination two years later. *Id.* at 7.

Plaintiff responds that Defendant misunderstands the applicable pleading standard and is arguing dismissal based on an evidentiary standard, not a pleading requirement. ECF No. [68] at 1. At the motion to dismiss stage, Plaintiff must allege sufficient factual matter to plausibly suggest intentional discrimination. *Id.* at 2. Plaintiff argues the SAC is sufficient because it identifies her as a Haitian-American, she was subjected to a derogatory comment about "sticking with [her] own kind, meaning Haitians," she received disparate disciplinary treatment after complaining about discrimination, and the EEOC found that "other employees who more flagrantly disregarded the [City's] policies received a relatively lighter penalty." *Id.* at 5. Defendant replies that merely pleading that the EEOC found reasonable cause is not sufficient to state a plausible claim. ECF No. [69] at 4.

A plaintiff may establish discrimination through direct evidence, the burden-shifting framework established in *McDonnell Douglas* or demonstrate a "convincing mosaic" of circumstantial evidence. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220, 1220 n.6 (11th Cir. 2019). To prove a *prima facie* case of discrimination under *McDonnell Douglas*, "a plaintiff must prove that he or she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002); *Roxbury-Smellie v. Fla. Dep't of*

*Corr.*, 324 Fed. App'x 783, 785 (11th Cir. 2009) (same, in the context of discrimination on the basis of national origin); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973) (finding that if plaintiff is able to establish a *prima facie* case of discrimination, then the burden shifts to defendant to show a legitimate, non-discriminatory reason for its employment action).

"However, as explained in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002), a plaintiff need not satisfy the *McDonnell Douglas* framework at the pleading stage in order to state a discrimination or retaliation claim." *Zachary v. Comprehensive Health Mgmt., Inc.*, 2012 WL 3264899, at *2 (M.D. Fla. Aug. 9, 2012). Nevertheless, "the ordinary rules for assessing the sufficiency of the complaint [still] apply." *Swierkiewicz*, 534 U.S. at 511; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) ("Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination.") "*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrance Found*, 789 F.3d 1239, 1246 (11th Cir. 2015). This is because "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required *prima facie* case. . . Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 511.

Taking the allegations in the SAC as true, Plaintiff has alleged sufficient facts to suggest discrimination based on national origin. Plaintiff is not required to plead direct evidence of discrimination nor satisfy the *McDonnell Douglas* elements. However, the *McDonnell Douglas* framework remains a "helpful guide to the determination of the issue." *Powell v. Harsco Metal*, No. 2:12-cv-4080, 2013 WL 3242759, at *5 (N.D. Ala. June 20, 2013) (relying on *the McDonnell Douglas* framework to assess motion to dismiss Title VII claim). Defendant argues that Plaintiff

fails to allege facts sufficient to establish that her employer treated similarly situated employees outside her class more favorably. ECF No. [67] at 4.

To establish that an employer treated similarly situated employees outside a plaintiff's class more favorably requires the plaintiff to identify a comparator—another employee who is "similarly situated in all material respects." *See Lewis*, 918 F.3d at 1229. Material similarities with plaintiff include engaging in the same conduct or misconduct; being subject to the same employment policy, guideline, or rule; having the same supervisor; or sharing the same employment or disciplinary history. *Id.* at 1228-29. A comparator is a case-by-case determination: similarities need not be identical or based on purely formal characteristics, and minor differences may not be disqualifying. *Id.* at 1226-27. A complaint will not be dismissed solely because plaintiff failed to identify a comparator. *See McManus v. Amerijet Int'l, Inc.*, No. 23-13554, 2024 WL 4003391, at *3 (11th Cir. Aug. 30, 2024) ("But even at summary judgment, 'the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.' . . . So that failure alone cannot support dismissal of the complaint.") (citing *Tynes v. Fla. Dep't of Juvenile Justice*, 88 F.4th 939, 946 (11th Cir. 2023)).[5] Thus, to survive a motion to dismiss, a plaintiff need not identify an exact comparator but must allege facts that plaintiff's membership in a protected class was the reason for the alleged adverse action.[6] *See Hargett v. Fla. Atlantic Univ. Board of Trustees*, No. 15-cv-80349, 2015 WL 13639189, at *2 n.1 (S.D. Fla. Dec. 15, 2015).

---

[5] Defendant cites cases where courts have dismissed a claim for failing to identify a comparator. *See, e.g.*, *Flemings v. U.S. Security Assocs., Inc.*, No. 18-24861-CIV, 2020 WL 1503638, at *7 (S.D. Fla. Mar. 4, 2020), *report and recommendation adopted*, 2020 WL 1493468 (S.D. Fla. Mar 27, 2020). The Eleventh Circuit has not clarified whether a plaintiff must plead a comparator to survive dismissal. *See Saintil v. Fla. Dep't Corr.*, No. 24-CV-23570, 2025 WL 1330282, at *3 n.3 (S.D. Fla. May 7, 2025) (comparing two unpublished Eleventh Circuit cases with conflicting holdings regarding identifying comparators at the pleading stage). Because the Eleventh Circuit is clear that a plaintiff does not need to establish a *prima facie* case at the pleading stage, the Court adopts the reasoning in *McManus*.

Plaintiff alleges that "[t]he City subjected Plaintiff to more severe discipline than similarly situated employees outside [Plaintiff's] protected class who committed similar or more serious policy violations." ECF No. ECF No. [63] at 5. By itself, this allegation is conclusory and does not allege facts such that the Court can infer discrimination based on national origin. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."). However, Plaintiff's November 2021 Charge identifies two potential comparators: Detective Moffatt and Detective Bonny, stating "Detective Moffatt and Detective Bonny, both black, non-Haitian, and gay or members of the LGBTQ community, were treated more favorably. They were not promptly removed from work or suspended for their misconduct on 02/12/21. . . . Detective Moffatt, who has prior discipline, was only issued a written warning[.]" ECF No. [63] at 16. Plaintiff identifies two employees who do not share the same national origin as Plaintiff and alleges they engaged in severe misconduct during the February 12, 2021 attack and received less severe disciplinary action. Whether those Detectives are proper comparators— i.e. are similarly situated in all material respects—is not an inquiry for this stage of proceedings. *See Borgella v. Robins & Morton Corp.*, No. 21-cv -22789, 2022 WL 2104215, at *3 (S.D. Fla. June 10, 2022) ("Arguments regarding whether coworkers were actually similarly situated is again, best left until after discovery."). As such, Plaintiff has pled facts to identify a comparator under *McDonnell Douglas.* Therefore, the SAC plausibly suggests discrimination based on national origin. Defendant's Motion is denied as to Count I.

### 2. Count II—Retaliation

Defendant argues that Plaintiff has not properly pled retaliation because Plaintiff fails to allege a causal connection between her alleged protected activity and an adverse employment action. ECF No. [67] at 11. Plaintiff does not provide any specifics about the disciplinary actions,

does not provide the dates of those actions other than they occurred after she filed the November 2, 2021 Charge, and does not identify the decision-makers of those actions. *Id.* at 12. Defendant argues that Plaintiff filed a Charge of Discrimination on November 2, 2021 and was not terminated until over a year later, on February 6, 2023. ECF No. [67] at 12. The time between the November 2021 Charge and Chief Juriga's denial of her training request and the failure to recognize her at a ceremony was almost eight months. *Id.* Defendant argues the lack of temporal proximity negates any causal connection. *Id.* Defendant cites cases finding that three to four months between the protected activity and the adverse action is insufficient. *Id.* Plaintiff also cannot claim a causal connection between the November 1, 2022 Charge and her termination because the denial of Plaintiff's training request, failure to recognize Plaintiff at a ceremony, and issuing a notice of intent to terminate occurred before Plaintiff filed that Charge. *Id.* at 12-13.

Plaintiff responds that the SAC alleges protected activity by filing complaints with the City, FCHR, and EEOC and that following that activity, Plaintiff was subjected to increased scrutiny, false disciplinary writes-ups, suspensions, and ultimately termination. ECF No. [68] at 5. Plaintiff argues the temporal proximity between the protected activity and adverse actions support a causal connection between the protected activity and the adverse actions. *Id.* at 5-6. Additionally, Plaintiff argues that temporal proximity is not the only way to establish causation and that Defendant engaged in a pattern of escalating retaliatory conduct following her protected activity, which supports a causal connection. *Id.* Plaintiff argues that identifying decision-makers and their knowledge of the protected activity is not required at the pleading stage. *Id.* at 7.

"In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Fla. Bd. of Regents*, 212

F.3d 571, 587 (11th Cir. 2000). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id.* at 587 (internal quotations omitted). "[A] plaintiff need not satisfy the *McDonnell Douglas* framework at the pleading stage in order to state a discrimination or retaliation claim." *Zachary*, 2012 WL 3264899, at *2. Nevertheless, "the ordinary rules for assessing the sufficiency of the complaint [still] apply." *Swierkiewicz*, 534 U.S. at 511.

Here, it is undisputed that Plaintiff filed charges with FCHR and the EEOC. *See generally* ECF Nos. [67], [68]. The timing of Plaintiff's alleged adverse employment actions is important to state a retaliation claim. The Charges attached to the SAC indicate that the first charge was filed on November 2, 2021, and the second charge on November 14, 2022. ECF Nos. [63] at 15-20.

Plaintiff alleges that after she complained about the February 12, 2021 incident, Defendant began subjecting her to disparate disciplinary treatment and issuing her disciplinary write-ups with suspensions "starting in 2021." ECF No. [63] ¶¶ 22-23. The SAC also alleges that after Plaintiff filed the November 2021 Charge, Defendant escalated its retaliatory conduct and issued her multiple disciplinary write-ups "between 2021 and 2022" including reprimands and suspensions without pay. *Id.* ¶¶ 26, 28. In July and August 2022, Police Chief Larry Juriga denied Plaintiff's request for required training for her position. *Id.* ¶ 33. On August 4, 2022, Police Chief Juriga did not recognize Plaintiff at the ceremony. *Id.* ¶ 34. On April 8, 2022, Defendant issued a Notice of Intent to Terminate Plaintiff's Employment. *Id.* ¶ 35. On February 6, 2023, Defendant terminated Plaintiff's employment. *Id.* ¶ 36.

The Court agrees with Defendant that Plaintiff cannot establish a causal connection between her November 12, 2022 Charge and adverse employment actions. The denial of her

training request, failure to recognize her at a ceremony, and issuing a Notice of Intent to Terminate occurred *before* she filed the November 2022 Charge. Although Plaintiff was terminated after filing that Charge, the Notice of Intent to Terminate was issued before the Charge, which does not support causation. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

However, Plaintiff alleges multiple adverse actions—write-ups, denial of training, failure of recognition, and termination—that occurred *after* the November 2021 Charge. Defendant argues Plaintiff cannot claim causation because the actions occurred eight months after Plaintiff's protected activity. ECF No. [67] at 12. The Eleventh Circuit has held that when a plaintiff seeks to establish causation in her *prima facie* case solely through temporal proximity, the time between the protected activity and the adverse employment action must be "very close." *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). As a matter of law, a period of three to four months does not establish causation. *Id.* ("A three-to-four-month disparity between the statutorily protected expression and the adverse employment action is not enough. . . . Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.").

The denial of training did not occur until eight months after the November 2021 Charge. However, Plaintiff alleges Defendant engaged in escalating adverse actions and that write-ups and suspensions began in 2021. Although the SAC does not allege precise dates of the write-ups,[7]

---

[7] The November 2021 Charge indicates Plaintiff was suspended for 32 hours on September 9, 2021, and for 80 hours on October 13, 2021. ECF No. [63] at 16. Those adverse actions do not support causation because the suspensions occurred before filing the November 2021 charge. However, the SAC alleges a suspension of 30 hours "and others." *Id.* ¶ 28. Further details regarding the date, nature, and decision-makers of the disciplinary actions will be necessary to evaluate Plaintiff's claims on the merits.

Plaintiff does not need to establish a *prima facie* case at the pleading stage. Therefore, alleging the type (reprimands and suspensions), consequence (suspension without pay of 32 hours, 30 hours, 80 hours, and others), and general timing (between 2021 and 2022) of disciplinary actions paired with the training, recognition, and termination allegations is sufficient to allege a causal connection between Plaintiff's protected activity and adverse employment actions. Therefore, Defendant's Motion is denied as to Count II.

### 3.   Count III—Hostile Work Environment

Defendant argues Plaintiff fails to allege facts to establish that she was subject to harassment based on her protected class. ECF No. [67] at 8. Plaintiff's Charges of Discrimination state that the harassment was due to her refusal to participate in an Internal Affairs ("IA") investigation, not because of Plaintiff's nationality. *Id.* The SAC also does not allege facts to show a connection between Plaintiff's protected class and her exclusion from recognition ceremonies and disciplinary actions. *Id.* at 9. Plaintiff identifies one comment related to national origin that, Defendant argues, is not disparaging of any protected class. *Id.* at 9. Defendant argues Plaintiff did not allege facts to demonstrate the harassment was sufficiently severe or pervasive to alter the terms of her employment. *Id.*

Plaintiff responds that her hostile work environment claim is adequately pled because she alleges she was subjected to threatening behavior, physical attacks, and derogatory comments about her Haitian heritage. ECF No. [68] at 7. Plaintiff argues the SAC alleges severe and pervasive behavior because the behavior included a physical attack by two police officers and ongoing threatening behavior from February 2021 to November 2022. *Id.* at 7-8. Plaintiff argues that stating in an EEOC charge that harassment occurred because she did not participate as a witness in an IA investigation does not mean that Plaintiff admitted that the harassment was not based on national origin. *Id.* at 8. Plaintiff argues EEOC charges are not formal pleadings or

16

binding admissions, and a Title VII lawsuit is not constrained to the precise language in the charge itself. *Id.* Plaintiff argues the fact that the EEOC concluded that Plaintiff was subjected to a hostile work environment based on her national origin "supersedes any ambiguity in the charge's language." *Id.* Moreover, Plaintiff argues discrimination based on refusal to participate in an IA investigation and discrimination based on national origin are not incompatible motivations because the IA investigation targeted Haitian employees for not providing testimony favorable to the complainants and was part of the discriminatory pattern. *Id.* at 9.

"[A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). "[T]o be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Id.* 1276 (internal quotation omitted; alterations adopted). Defendant argues Plaintiff has not established the third and fourth elements.

The SAC alleges multiple acts that constitute harassment: the February 12, 2021 incident, threatening and intimidating behavior by supervisors and colleagues, derogatory comments about her association with Haitians, discriminatory exclusion from department recognition ceremonies, and a systematic pattern of pretextual disciplinary actions. ECF No. [23] ¶¶ 57-58. However, other than the statement made by Detective Bonny regarding the February 12, 2021 incident, Plaintiff does not allege any facts to establish a connection between the harassment and her national origin.

*See generally* ECF No. [63]. The SAC alleges the harassment "was based on Plaintiff's national origin," which is conclusory and does not provide any factual allegations to support that conclusion. *Id.* ¶ 59. *See Davila*, 326 F.3d at 1185 ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."). The November 2021 Charge indicates the harassment occurred because Plaintiff did not want to participate in an IA investigation. ECF No. [63] at 15. Plaintiff's Response argues that the IA investigation was part of the discriminatory pattern as the investigation targeted Haitian employees. ECF No. [68] at 9. However, those details regarding the IA investigation are not alleged in the SAC, and Plaintiff cannot amend her pleading in response to Defendant's Motion. *See Williams v. Allen*, No. 17-cv-00242, 2017 WL 1653744, at *5 n.7 (M.D. Fla. May 2, 2017) ("A plaintiff, however, cannot amend a pleading through statements contained in a response brief."). Therefore, Plaintiff has not established a connection between those actions and her national origin.

The SAC only alleges facts regarding a connection between Plaintiff's national origin and harassment based on the February 12, 2021 incident and Detective Bonny's statement. As such, Plaintiff has stated a claim if the February 12, 2021 incident is sufficiently severe. *Miller*, 277 F.3d at 1275. Plaintiff indicates she "feared for [her] safety and [her] life," establishing the subjective component. ECF No. [63] at 16. The Eleventh Circuit instructs courts to consider the following factors for objective severity: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).

The November 2021 Charge describes actions by Detective Moffat and Detective Bonny on February 12, 2021 where Detective Moffatt balled her fist and hit her hand several times

18

aggressively and then lunged at [Plaintiff] in an attempt to strike [Plaintiff]." ECF No. [63] at 15. Plaintiff later learned Detective Bonny made a biased comment referencing Plaintiff's national origin. *Id.* at 16. Plaintiff alleges both detectives carry guns and are physically bigger than Plaintiff. *Id.* The description of an interaction involving acts by armed detectives that are physically threatening and made Plaintiff fear for her life are sufficient to allege physically intimidating conduct that is sufficiently severe to sustain a claim. Therefore, Defendant's Motion is denied as to Count III.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss, **ECF No. [67]**, is **DENIED**

2.  Defendant shall file an Answer to the Second Amended Complaint **by June 26, 2026.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 16, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record