**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-20048-BLOOM/Elfenbein**

NATACHA JEAN-FRANCOIS,

Plaintiff,

v.

THE CITY OF NORTH MIAMI,

Defendant.
_________________________/

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant The City of North Miami's Motion for Summary Judgment ("Motion"), ECF No. [71]. Plaintiff Natacha Jean-Francois filed a Response, ECF No. [79], to which Defendant filed a Reply. ECF No. [83]. The Court has reviewed the Motion, the Response, the Reply, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

## I. BACKGROUND

### A. Procedural History

Plaintiff identifies as a Haitian-American female and alleges that, while employed by Defendant The City of North Miami, she faced discrimination, retaliation, and a hostile work environment. Plaintiff's Second Amended Complaint asserts three violations of Title VII of the Civil Rights Act: National Origin Discrimination (Count I), Retaliation (Count II), and Hostile Work Environment (Count III). ECF No. [63]. The Court denied Defendant's Motion to Dismiss the Second Amended Complaint, finding that Plaintiff had alleged facts sufficient to state a claim as to each count. ECF No. [84].

Defendant seeks summary judgment on all counts arguing that Plaintiff's claims of discrimination, retaliation, and hostile work environment fail because she has not shown evidence to establish a *prima facie* case, and Defendant has legitimate, non-discriminatory, and non-retaliatory reasons for each of the disciplinary actions taken against Plaintiff. ECF No. [71]. Plaintiff responds that summary judgment should be denied because the record, viewed in the light most favorable to Plaintiff, contains sufficient circumstantial evidence that a reasonable jury could find discrimination and retaliation. ECF No. [79].

**B. Material Facts**

Based on the parties' briefings, the statements of material facts, and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted by the Court.[1]

Defendant hired Plaintiff as a Crisis Intervention Specialist, also known as a Victim's Advocate, on January 25, 2011. ECF No. [72] ¶ 1. On February 12, 2021, Plaintiff was involved in an incident with Detective Kimberly Bonny and Detective Kamesha Moffatt, in which Plaintiff was "almost physically attacked." *Id.* ¶¶ 2-3. That day, Plaintiff reported the incident to command

[1] Plaintiff designates many facts as disputed. *See generally* ECF No. [78-1]. However, many of Plaintiff's explanations provide additional information that does not directly dispute Defendant's facts or Plaintiff responds with inferences and general conclusions. *See Shuler v. Ingram & Associates*, 441 F. App'x 712, 715 (11th Cir. 2011) ("Speculation or conjecture cannot create a genuine issue of material fact."). Moreover, the Court considers that many of Plaintiff's facts do not cite to evidence on the record. *See, e.g.*, ECF No. [78-1] ¶¶ 23, 24, 30, 31, 35, 68. Although Plaintiff's response to Defendant's Statement of Facts is a Declaration signed by Plaintiff under penalty of perjury, such references to Plaintiff's own testimony may not be sufficient to contradict Defendant's facts without further corroboration. *See, e.g.*, *Thomas v. Dade Cnty. Pub. Tr.*, 177 F. Supp. 2d 1283, 1288 (S.D. Fla. 2001) ("[C]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment."); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) ("Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony."); *Venerio v. Fed. Express Corp.*, No. 17-22624-CV, 2018 WL 5283876, at *5 (S.D. Fla. Sept. 17, 2018), *report and recommendation adopted*, No. 17-22624-CIV, 2018 WL 4771523 (S.D. Fla. Oct. 3, 2018) ("[B]ald conclusions, opinions, and hearsay without supporting specific facts are not admissible and do not create a genuine issue of material fact."). Thus, the Court does not strictly adopt what Plaintiff identifies as facts in dispute and provides its own analysis of the disputed facts based upon the parties' briefing, statements of material facts, and associated exhibits.

staff, including Police Chief Larry Juriga. *Id.* Plaintiff reported that she approached the main door to the entrance of her work area after her break at 4:00 p.m., and she "noticed [D]etective Moffatt standing in the alleyway . . . her gaze was already upon [Plaintiff]. . . . She continued to glare/stance [sic] at [Plaintiff] as [she] passed the copier." *Id.* ¶ 4. When Plaintiff walked toward the desk, Detective Moffatt was still "staring" at Plaintiff, so she asked, "[I]s there a problem?" To which Detective Moffatt responded, "[W]hat is your problem? You're staring at me!" *Id.* at 5. Plaintiff stated that Detective Moffatt was on the phone at the time, reciting what was happening with Plaintiff and "pacing back and forth towards [Plaintiff]." *Id.* at 6. Plaintiff then alleges that the "next thing [she saw was] both [D]etective Moffatt and [Detective] Bonny approaching [her] workspace area in a charging manner and stood right in front of the gun storage." *Id.* ¶ 7. As they were retrieving their guns, Detective Moffatt asked, "[W]hat is your problem? You have a problem with people staring at you?" *Id.* ¶¶ 7-8. Detective Bonny replied, "[S]he stares all the time, I don't know what is her problem?" *Id.* Plaintiff stood up from her desk and said, "[T]hat's it! I'm not going to take this anymore. I'm going to the Chief!" *Id.* Plaintiff reported that the incident stemmed from Plaintiff refusing to be a witness for Detective Moffatt in a previous Internal Affairs ("IA") investigation. *Id.* ¶ 9. Sergeant Stacina Jones, Plaintiff's supervisor, instructed her to remain home while Defendant investigated her complaints. *Id.* ¶ 10. About one to two weeks after the February 12, 2021 incident, Plaintiff requested to file a police report, but the Police Chief informed her that he was investigating the matter and would follow up. ¶ 18.

Detective Moffatt and Detective Bonny reported certain incidents and behaviors of Plaintiff.[2] *Id.* ¶ 14. Defendant investigated the complaints. *Id.* ¶15. After the investigation into those claims, Plaintiff read in a report that Detective Bonny said in an interview, "I guess [Plaintiff]

[2] Plaintiff disputes the underlying conduct complained of and the motives of Detective Moffatt and Detective Bonny but does not dispute that there were complaints filed. ECF No. [78-1] ¶ 12.

don't want to deal . . . with us. She's sticking with her kind, the Haitians." *Id.* ¶ 16. Plaintiff states that statement came directly from Detective Moffatt's reprimand, dated February 16, 2021. ECF Nos. [78-1] ¶ 16; [78-2] at 5.

On April 5, 2021, Plaintiff filed a Complaint of Discrimination with the Florida Commission on Human Relations ("FCHR"), No. 15D-2021-00451 ("April 2021 Charge"), asserting Defendant discriminated against her on the basis of her sex, national origin, age, and marital status. *Id.* ¶ 19. Defendant's internal investigation into Plaintiff's, Detective Moffatt's, and Detective Bonny's complaints regarding the February 12, 2021 incident was in progress at the time Plaintiff filed her April 2021 Charge. *Id.* ¶ 22. Defendant also opened an investigation into Plaintiff's alleged interference in an ongoing investigation ("IA Investigation 21-05"). *Id.* ¶ 25.

On May 6, 2021, the Administrative Review of the February 12, 2021 incident was concluded, revealing no evidence of a hostile work environment. *Id.* ¶ 26. During the Administrative Review, Plaintiff stated that the relationship between Detective Moffatt, Detective Bonny, Crime Scene Technician ("CST") Claudia Duverseau, and Plaintiff deteriorated because of an earlier investigation, which began in November 2020. *Id.* ¶ 78.[3] According to Plaintiff, because Plaintiff did not testify favorably regarding Detective Moffatt's complaint, Detective Moffatt, Detective Bonny, and CST Duverseau changed their behavior toward her. *Id.* ¶ 28.[4] The

[3] The parties dispute the reason the investigation was initiated. Defendant states the investigation was initiated when Detective Moffatt complained about CST Duverseau. ECF No. [72] ¶ 27. Plaintiff states the investigation was initiated when Detective Moffatt complained about two other Haitian male detectives (Michel Tovar and Frederick Gedeus) who allegedly made derogatory remarks about Detective Moffatt's sexual orientation in Haitian-Creole, a language Detective Moffatt does not speak. ECF No. [78-1] ¶ 27.

[4] Plaintiff responds that the change in behavior was because she did not corroborate that two Haitian Detectives made derogatory statements about Detective Moffatt's sexual orientation and adds that Detective Moffatt's and Detective Bonny's hostility began not merely because of her refusal to testify but because of her identity as a Creole-speaking Haitian woman. ECF No. [78-1] at 28.

Administrative Review and Disposition Panel determined that the actions of all parties involved were not based on any protected characteristics. *Id.* ¶ 29.

Around August 17, 2021, Plaintiff was sent home for 24 hours without pay. *Id.* ¶ 33. The parties disagree as to the reason why, but the incident concerned directives from Commander Horn regarding retrieving folders related to the Department's Victims of Crime Act ("VOCA") invoices.[5] On August 19, 2021, Defendant concluded its investigation into CST Duverseau's allegations regarding Plaintiff's inappropriate involvement in an ongoing investigation on December 23, 2020. *Id.* ¶ 34.

On September 8, 2021, Chief Juriga issued a Notice of Intent to Discipline Plaintiff regarding the events of August 17, 2021. *Id.* ¶ 36. Chief Juriga issued a written reprimand and a 32-hour suspension without pay, which Plaintiff signed. *Id.*

On September 28, 2021, Plaintiff received a Notice of Disciplinary Action, specifically an 80-hour suspension, for unauthorized release of confidential information and for interfering with an ongoing investigation. *Id.* ¶¶ 37-38. The Notice of Disciplinary Action was issued after a Disposition Panel convened to review the facts regarding IA Investigation 21-05, regarding Plaintiff's interference with another investigation, and ultimately held that Plaintiff released confidential information about an ongoing investigation and attempted to interfere with the investigation, violating the City's various rules and regulations. *Id.*

On October 5, 2021, the FCHR issued a Determination finding no reasonable cause for discrimination with respect to Plaintiff's April 2021 Charge. *Id.* ¶ 39. The FCHR Determination

[5] Defendant states Plaintiff was sent home for insubordination and refusing to comply with Major Donald Blanchard's and Commander Brittany Horn's directives regarding the VOCA invoices, which Plaintiff was responsible for processing and submitting, and for Plaintiff's refusal to answer Major Blanchard's questions about the same. ECF No. [72] ¶¶ 31-33. Plaintiff states that she was not insubordinate because she was being asked to do something outside her job duties and that she was sent home without any due process and in violation of Defendant's disciplinary policies and procedures. ECF No. [78-1] ¶¶ 31-33.

becomes final if Plaintiff does not file a Petition for Relief within 35 days and the Commission will dismiss the complaint. *Id.* ¶ 40.[6]

On November 2, 2021, Plaintiff filed another Charge of Discrimination with the FCHR, No. 510-2021-02724 ("November 2021 Charge"), alleging she was discriminated against on the basis of her race, sex, national origin, and age, and that she was retaliated against. *Id.* ¶ 41. The November 2021 Charge raised the February 12, 2021 incident, for which the FCHR already found no cause, repeating Plaintiff's contention that the incident occurred because she "did not wish to participate in an Internal Affairs Investigation of Detective Moffatt's November 2020 complaint." *Id.* ¶ 42. The November 2021 Charge also included the 32-hour suspension because of the August 17, 2021 insubordination to Commander Brittany Horn and Major Donald Blanchard and receiving a Notice of Intent to Discipline for Plaintiff's interference in an ongoing investigation. *Id.* ¶¶ 43-44.

On November 8, 2021, Commander Horn emailed Plaintiff requiring her attendance at NoMi Angels, a community fundraising event for victims of abuse, on Saturday, November 20, 2021. *Id.* ¶ 45.[7] Plaintiff communicated with her superiors regarding her attendance. On November 9, 2021, Commander Horn met with Plaintiff to discuss her response to Commander Horn's email stating that Commander Horn could not require her to work on the weekend. *Id.* ¶¶ 48-49.[8]

---

[6] Plaintiff states she filed a Petition for Relief within 35 days. ECF No. [78-1] ¶ 40. Defendant responds that Plaintiff does not cite to the record to support her assertion. ECF No. [82] ¶ 40.

[7] Plaintiff responds that her attendance at a fundraising event cannot be mandatory on her regular day off of work and that she had already informed Sergeant Miranda that she had plans that day but would check her availability. ECF No. [78-1] ¶ 45. The parties dispute whether the Police Chief required or preferred her attendance. ECF Nos. [72] ¶ 45; [78-1] ¶ 45.

The parties also dispute whether Plaintiff attended the event. Plaintiff states she cancelled her pre-planned family event and attended the event. ECF No. [78-1] ¶ 47. Defendant states the record confirms that Plaintiff refused to attend the event even if she "ultimately (allegedly) attended." ECF No. [82] ¶ 47.

[8] The parties dispute the content, tone, and purpose of that meeting. ECF Nos. [72] ¶¶ 50-52; [78-1] ¶¶ 50-52.

On April 7, 2022, Defendant issued a Notice of Intent to Discipline Plaintiff regarding the NoMi Angels event and Plaintiff's response, specifically a 32-hour suspension without pay and a deduction of 40 hours from her vacation bank. *Id.* ¶ 53.[9] Plaintiff refused to sign the acknowledgement of her receipt of the Notice of Intent to Discipline. *Id.* ¶ 54.

On April 6, 2022, Chief Juriga reduced Plaintiff's discipline for the release of confidential information and the improper interference in an ongoing investigation (IA Investigation 21-05) from the recommended 80-hour suspension without pay to a written reprimand. ECF No. [78-1] ¶ 56. Plaintiff adds that it was after she submitted a rebuttal on October 25, 2021, with evidence regarding the relationship between CST Duverseau and Retired Detective Alanzo Rhymer. ECF No. [78-1] ¶ 56. Plaintiff refused to acknowledge her receipt of the Notice of Disciplinary Action. ECF No. [72] ¶ 57.

On April 8, 2022, Defendant issued a Notice of Intent to Terminate Plaintiff's employment due to her refusal to acknowledge receipt of a Notice of Disciplinary Action resulting from IA Investigation 21-05, which found Plaintiff interfered with an ongoing investigation, and a Notice of Intent to Discipline memorandum linked to her refusal to attend the NoMi Angels event. *Id.* ¶ 58. The Notice of Intent to Terminate incorporated Plaintiff's prior instances of insubordination, including her insubordination on August 17, 2021, when she refused to follow Commander Horn's and Major Blanchard's orders. *Id.* ¶ 59.

On April 28, 2022, the Equal Employment Opportunity Commission ("EEOC") adopted the FCHR's Determination regarding Plaintiff's April 2021 Charge, finding no reasonable cause, dismissed the Charge, and issued a Notice of Right to Sue. *Id.* ¶ 60; ECF No. [72-9].

---

[9] Plaintiff states that she was being reprimanded five months after the event, which she attended, and the delay in the reprimand violated the City's rules and procedures. ECF No. [78-1] ¶ 53.

On November 14, 2022, Plaintiff filed a Charge of Discrimination, No. 510-2022-07920 ("November 2022 Charge"), alleging discrimination based on her age, national origin, race, and sex. *Id.* ¶ 61. The November 2022 Charge claimed that Defendant retaliated against Plaintiff for filing a Charge without specifying which Charge, verbally counseled Plaintiff, falsely accused Plaintiff of insubordination, suspended Plaintiff without pay, assigned Plaintiff job duties outside of her scope, and issued a Notice of Intent to Terminate her employment. *Id.* ¶ 62. The November 2022 Charge repeated Plaintiff's allegation from the April 2021 Charge that Detective Moffatt attempted to physically attack her. *Id.*

On February 6, 2023, Defendant finalized Plaintiff's termination and issued a confirmation letter. *Id.* ¶ 63. On February 13, 2023, Plaintiff appealed to the City's Personnel Appeal Board. *Id.* ¶ 64. The Personnel Appeal Board held hearings on June 26, 2023; July 20, 2023; August 9, 2023; August 10, 2023; and October 16, 2023. *Id.* ¶ 65. The Personnel Appeal Board found that Defendant's rationale to discipline and terminate Plaintiff for refusing to sign disciplinary action forms should not constitute insubordination. ECF No. [73-16]. On October 16, 2023, the Personnel Appeal Board recommended that Defendant reinstate Plaintiff's employment to a vacant position with equivalent pay, benefits, and other terms and conditions of employment or, if an equivalent vacant position was not available, Plaintiff should be returned to her original position as a Crisis Intervention Specialist. *Id.* ¶ 66. At the time of the recommendation, the Crisis Intervention Specialist/Victims Advocate position had been filled. *Id.* ¶ 67.[10]

On November 2, 2023, Defendant offered Plaintiff the position of Office Administrator in the Mayor and Council Office, which had the same pay and benefits as her prior position. *Id.*

[10] Plaintiff adds that the position had been filled because of Defendant's delay in scheduling the appeal hearing, which unlawfully delayed the process, in violation of her due process rights and the City's grievance and appeals policy. ECF No. [78-1] ¶ 67.

¶ 68.[11] Plaintiff refused to accept that position. *Id.* ¶ 69. On December 7, 2023, Defendant paid Plaintiff backpay from February 6, 2023, until November 20, 2023, in accordance with the Personnel Appeal Board's recommendation. *Id.* ¶ 70.

On October 28, 2024, Plaintiff filed a Charge of Discrimination ("October 2024 Charge") with the Miami-Dade Commission on Human Rights, asserting that Defendant failed to reinstate her on the basis of her national origin. *Id.* ¶ 71. The October 2024 Charge repeated Plaintiff's earlier allegations that she was treated differently because of her national origin, citing that Defendant allowed certain actions against her—the February 12, 2021 incident, being subjected to name-calling, harassment, and bullying—that others did not experience and added that Defendant failed to reinstate her in accordance with the Personnel Appeal Board's recommendation. *Id.* ¶ 72.

On January 6, 2025, Plaintiff filed the instant lawsuit. *Id.* ¶ 73. Plaintiff claims that Detective Bonny and Detective Moffatt were disciplined multiple times for insubordination. *Id.* ¶ 74. Detective Bonny and Detective Moffatt received discipline for providing inaccurate statements during Administrative Review 21-03, concerning the February 12, 2021 incident. *Id.* ¶ 75. Plaintiff alleges that Commander Horn would "pinpoint[]" Plaintiff by calling Plaintiff to Commander Horn's office or "commanding [her] to the floor or somewhere there would be others present." *Id.* ¶ 76. Plaintiff alleges Commander Horn frequently called her to Commander Horn's office, singled her out, spoke down to her, reprimanded her in front of others, threatened to send her home, and assigned her tasks that Plaintiff believed were beyond her job scope. *Id.* ¶ 77.

---

[11] Plaintiff states it is not an equivalent position because the position offered is a secretarial position requiring a high school diploma, which is not comparable to an experienced Masters of Social Work, Crisis Intervention Specialist, which requires, at minimum, a bachelor's degree. ECF No. [78-1] ¶ 68. Defendant responds that Plaintiff has no evidence to support her argument that this was not an equivalent position. ECF No. [82] ¶ 68. Plaintiff points to an email exchange between Plaintiff and Defendant's Personnel Department, stating that a November 6, 2023 email acknowledged that there was "no vacant equivalent position." ECF No. [78-1] ¶ 68. A review of the emails does not indicate that Defendant stated that the position offered was not equivalent and instead identifies the job as equivalent in pay and benefits. *See* ECF No. [72-11].

Plaintiff alleges CST Duverseau "mimicked" her and made comments in Creole to harass her. *Id.* ¶ 78. Plaintiff alleges that CST Duverseau, who sat in front of Plaintiff, often "pretend[ed]" to be on the phone in front of Plaintiff to avoid speaking with Plaintiff. *Id.* ¶ 79. Plaintiff testified that she overheard CST Duverseau say that she could not stand Plaintiff. *Id.* CST Duverseau is Haitian and speaks Creole. *Id.* ¶ 80. Plaintiff claims that she was frequently "fending off officers walking with guns," being laughed at, and being purposely "bumped into." *Id.* ¶ 81. Plaintiff maintains that her "performance was always more than adequate." *Id.* ¶ 82. Plaintiff claims that Commander Horn was disrespectful to Haitian employees who worked on the same floor as Plaintiff. *Id.* ¶ 83. Plaintiff also admitted that she has not seen Commander Horn interact with any other ethnic group. *Id.* ¶ 84. Major Blanchard is Haitian American. *Id.* ¶ 84.

## II. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable

to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## III. DISCUSSION

### A. Count I—Discrimination Based on National Origin

Defendant argues that Plaintiff cannot establish her discrimination claim because Plaintiff has not presented any direct evidence of discrimination, she cannot establish a *prima facie* case

under the *McDonnell Douglas* framework, and Plaintiff cannot present a convincing mosaic of discrimination. ECF No. [71] at 2-8. Plaintiff's Response does not argue she presented direct evidence of discrimination or that she has satisfied the *McDonnell Douglas* framework. *See generally* ECF No. [79]. Plaintiff responds that the record contains ample circumstantial evidence from which a reasonable jury could find discrimination. *Id.* at 1. Therefore, Plaintiff has presented a convincing mosaic of circumstantial evidence to infer discrimination. *Id.* at 2. Defendant replies that Plaintiff's Response relies entirely on a convincing mosaic, which tacitly concedes that she has no direct evidence of discrimination and cannot satisfy the *McDonnell Douglas* framework. ECF No. [83] at 1.

**1. Summary Judgment Analysis for Employment Discrimination Cases**

A plaintiff may establish discrimination through direct evidence, the burden-shifting framework established in *McDonnell Douglas*, or demonstrate a "convincing mosaic" of circumstantial evidence. *Lewis*, 918 F.3d at 1220, 1220 n.6 (citations omitted). To prove a *prima facie* case of discrimination under *McDonnell Douglas*, "a plaintiff must prove that he or she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002); *Roxbury-Smellie v. Fla. Dep't of Corr.*, 324 Fed. App'x 783, 785 (11th Cir. 2009) (same, in the context of discrimination on the basis of national origin); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973) (finding that if plaintiff is able to establish a *prima facie* case of discrimination, then the burden shifts to defendant to show a legitimate, non-discriminatory reason for its employment action).

The Eleventh Circuit has clarified the proper use of the *McDonnell Douglas* framework and instructed district courts on the proper review of summary judgment motions in employment discrimination cases:

> If the plaintiff can establish a *prima facie* case, she is entitled to a rebuttable presumption of illicit intent. This necessarily means that if the defendant fails to proffer evidence of a legitimate reason for the adverse employment action, summary judgment in favor of the plaintiff is appropriate. Where, as is more common, the defendant comes forth with evidence and successfully rebuts the presumption, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant. It simply drops out of the picture. At this point, the court must proceed to ask whether the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker. A showing of pretext (or lack thereof) would certainly be relevant. But a plaintiff's inability to disprove the defendant's rationale cannot be the sole grounds for summary judgment.

*Ismael v. Roundtree*, 161 F.4th 752, 764 (11th Cir. 2025) (internal citations and quotations omitted). The district court must adopt a different approach if the plaintiff does not establish a *prima facie* case. A plaintiff who fails to establish a *prima facie* case "does not automatically lose on summary judgment." *Id.* "Rather than lose by default, the consequence is that the plaintiff must produce enough evidence, on her own and without any helpful evidentiary burdens or presumptions, to demonstrate a material issue of triable fact. A court, therefore, should advance directly to the convincing mosaic inquiry." *Id.* at 765. "The 'convincing mosaic' analysis—despite its flowery language—is a stand-in for the Rule 56 summary judgment standard applied to employment discrimination." *Id.* at 760; *see also Tynes v. Fla. Dep't of Juvenile Justice*, 88 F.4th 939, 946 (11th Cir. 2023) (the convincing mosaic standard is a "rearticulation of the summary judgment standard").

Thus, a plaintiff may survive summary judgment by "present[ing] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Gaskin v. Healthtrust Workforce Sols.*, No. 0:24-CV-60431, 2026 WL 32786, at

*7 (S.D. Fla. Jan. 6, 2026). "Such evidence may include '(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual.'" *Ismael*, 161 F.4th at 760 (internal citations omitted).

Because Plaintiff does not argue that she has direct evidence of discrimination or that she has established a *prima facie* case of discrimination, the Court proceeds to address the parties' arguments as to a convincing mosaic of circumstantial evidence.

**2. Convincing Mosaic**

Defendant argues that Plaintiff has not presented a convincing mosaic of circumstantial evidence. ECF No. [71] at 6. Plaintiff offers no evidence of "suspicious timing" to infer discrimination because Plaintiff was disciplined for misconduct that was in close temporal proximity to Plaintiff's termination. *Id.* Plaintiff has not pointed to evidence of "ambiguous statements" to infer discrimination because the one statement of "sticking with her kind, the Haitians" was made by a non-decisionmaker almost two years before her termination. *Id.* at 7. There is also no evidence of systematically better treatment of similarly situated employees where Commander Horn was disrespectful to other Haitian employees, but Plaintiff has not seen Commander Horn interact more favorably towards any other ethnic group. *Id.* at 8. Plaintiff also cannot establish that Defendant's reasons to discipline and eventually terminate Plaintiff's employment were a pretext for discrimination because Plaintiff, in the relevant time period, interfered with an ongoing investigation and demonstrated consistent insubordination. *Id.* Defendant even reduced one of her disciplinary actions. *Id.* Plaintiff's mosaic, even viewing in the light most favorable to Plaintiff, does not evidence discriminatory intent. *Id.*

Plaintiff responds that the record contains circumstantial evidence to infer discrimination. ECF No. [79] at 1. Plaintiff points to the following evidence to support a convincing mosaic:

- Plaintiff's long positive work history as a Crisis Intervention Specialist/Victim Advocate that had not included any notice of insubordination for the prior ten years;

- The February 12, 2021 incident where Detective Moffatt and Detective Bonny approached and intimidated her after she refused to support Detective Moffatt in an Internal Affairs matter;

- A national-origin-related remark made by Detective Bonny that Plaintiff was "sticking with her kind, the Haitians[;]"

- Evidence that Detective Moffatt and Detective Bonny received lesser discipline despite findings concerning inaccurate statements and/or insubordination;

- The Personnel Appeal Board's findings that Detective Moffatt remained employed with only a written reprimand for insubordination, civilians should not be held to the same standard as police officers, refusal to sign a disciplinary form should not constitute insubordination, and Plaintiff met her burden to overturn her termination;

- The Personnel Appeal Board's recommendation that the termination be rescinded;

- The EEOC's reasonable-cause finding that Plaintiff was subjected to disparate treatment and suspensions based on national origin;

- Evidence that the August 2021 directive concerned duties outside Plaintiff's job description; and

- Evidence that Defendant did not follow progressive and consistent discipline principles.

ECF No. [79] at 12-13.

Defendant replies that Plaintiff identifies unrelated workplace disputes that have nothing to do with her national origin. ECF No. [83]. Plaintiff presents petty workplace disputes, her refusal to accept feedback, and her refusal to follow directives, which is insufficient to constitute intentional discrimination. *Id.* Plaintiff has not shown that anyone involved in any of the employment decisions concerning Plaintiff made those decisions because of her national origin. *Id.* at 2.

Plaintiff need only show that her national origin was *a* motivating factor, not the *only* motivating factor for her adverse employment actions. *See Quiqq v. Thomas Cnty. School Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (stating that a "mixed-motive" discrimination claim under Title VII can succeed if the plaintiff shows illegal bias "was a motivating factor for an adverse employment action, even though other factors also motivated the action.") (internal citation and quotation omitted). When viewing the evidence in the light most favorable to Plaintiff, Plaintiff points to evidence from which a reasonable jury could infer that discrimination was a motivating factor. Specifically, Plaintiff identifies that her supervisor, Commander Horn, was disrespectful to Haitian employees who worked on the same floor as Plaintiff, ECF No. [72] ¶ 83; Commander Horn issued directives and was involved in meetings that led to disciplinary actions on the basis of Plaintiff's insubordination, *Id.* ¶¶ 30-33; 36, 45-53; non-Haitian employees received lesser discipline for insubordination and making false statements, *Id.* ¶ 75, ECF No. [73-16]; the Personnel Appeal Board overturned Plaintiff's termination, finding that Defendant's rationale to discipline and terminate Plaintiff for refusing to sign disciplinary action forms should not constitute insubordination, ECF No. [73-16]; and the EEOC found reasonable cause to believe Plaintiff was subjected to disparate treatment and suspensions based on her national origin. ECF No. [78-5].[12]

Plaintiff also points to disputed evidence to undermine Defendant's claim that insubordination justified Plaintiff's disciplinary actions and termination. The parties dispute whether Plaintiff was directed to act within her job duties regarding the August 17, 2021 directive

---

[12] Defendant argues that the Court should not defer to the EEOC's finding on one of Plaintiff's Charges because the EEOC has made inconsistent determinations concerning substantially similar claims. ECF No. [83] at 6-8. The Court agrees with Defendant that it is not bound by the EEOC's determination. *See Kincaid v. Bd. of Trs.*, 188 F. App'x 810, 817 (11th Cir. 2006) ("[T]he magistrate judge was not required to defer or make reference to the EEOC determination; the magistrate judge had to conduct a *de novo* review of the claims." (citing *Moore v. Devine*, 767 F.2d 1541, 1549–51 (11th Cir.1985))). However, the EEOC's determinations are evidence in this case, and the Court does not weigh evidence at summary judgment.

on VOCA invoices and the November 8, 2021 directive regarding the NoMi Angels event. ECF No. [78-1] ¶¶ 30-33; 36, 45-53. Additionally, the parties contest the context and content of Plaintiff's November 9, 2021 meeting with Commander Horn, which resulted in a Notice of Intent to Discipline Plaintiff for her insubordination. *Id.* ¶¶ 48-54. Defendant's Notice of Intent to Terminate was based, in part, on Plaintiff's refusal to sign the Notice of Intent to Discipline regarding the November 8-9, 2021 interactions and Plaintiff's insubordination regarding the August 17, 2021 incident. ECF Nos. [72-1] ¶¶ 58-59; [72-8]. As such, those disputed facts are material to Plaintiff's discrimination claim.

Defendant's arguments that Plaintiff has not established a convincing mosaic are unconvincing. Defendant argues that Plaintiff's evidence is not sufficient to infer intentional discrimination because Plaintiff has not identified a proper comparator; Plaintiff has not shown ambiguous statements because Detective Bonny's statement is not evidence of discrimination because it was allegedly made by a non-decisionmaker outside the presence of Plaintiff; and Plaintiff has failed to establish systematically better treatment of similarly situated employees because Plaintiff did not see Commander Horn interact more favorably toward any other ethnic group. However, a plaintiff does not need to identify a comparator to survive summary judgment. *See Tynes*, 88 F.4th at 946 ("[T]he plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.") (internal citation and quotation omitted). Moreover, the Court *may* consider a comparator, ambiguous statements, and better treatment of similarly situated employees, but the Eleventh Circuit in *Ismael* clarified that "a plaintiff may avoid summary judgment by presenting a wide range of circumstantial evidence." 161 F.4th at 760 (emphasis added). The Court finds Plaintiff has presented other circumstantial evidence to survive summary judgment.

Where Plaintiff has pointed to evidence to indicate that Commander Horn acted disrespectfully toward Haitians, Commander Horn was involved in contentious conversations with Plaintiff that led to disciplinary actions and ultimately termination, and the Personnel Appeal Board rejected Defendant's rationale for Plaintiff's insubordination, Plaintiff has presented circumstantial evidence regarding her supervisor's motivations and that Defendant's rationale was a pretext such that a reasonable jury could infer that bias based on Plaintiff's national origin was a motivating factor in Defendant's employment decisions. *See Buckley v. Sec'y of Army*, 97 F.4th 784, 795 (11th Cir. 2024) ("So while a reasonable jury could infer that Major Zhu took HIPAA violations especially seriously, it could alternatively draw the reasonable inference that Major Zhu did not like Buckley and was out to get her. That leaves the question as to why Major Zhu wanted Buckley dismissed. And that presents a jury question."). Accordingly, summary judgment is denied as to Count I.

**B. Count II—Retaliation**

Defendant argues that Plaintiff has not established her claim of retaliation because she cannot establish a causal connection between her protected activity and any adverse actions taken against her. ECF No. [71] at 18. Defendant argues that the complaints in the April 2021 Charge state that the February 12, 2021 incident was the result of Plaintiff failing to participate in the investigation, not because of her national origin. *Id.* Therefore, the April 2021 Charge is not a protected act to support a retaliation claim. *Id.* If the April 2021 Charge is protected activity, Plaintiff's first disciplinary action—suspension for insubordination—was issued on September 8, 2021, approximately eight months after her February complaints and six months after the April 2021 Charge. *Id.* Plaintiff filed the November 2021 Charge after Defendant recommended an 80-hour suspension for unauthorized release of confidential information and for interfering with an ongoing investigation. *Id.* Defendant initiated its investigation into Plaintiff's improper

interference on April 26, 2021, six months before the November 2021 Charge. *Id.* Plaintiff's second suspension on April 7, 2022, is too far removed from the April 2021 Charge and the November 2021 Charge. *Id.* at 19. Finally, there is no causal connection between the November 2022 Charge and her termination because Defendant issued a Notice of Intent to Terminate on April 8, 2022, before she filed the November 2022 Charge. *Id.*

Plaintiff responds that the record contains circumstantial evidence to infer retaliation. ECF No. [79] at 1. Plaintiff refers to the same mosaic of evidence to support her discrimination claim, consisting of her long positive work history, workplace hostility following internal-affairs activity, disputed facts concerning Defendant's insubordination rationale, unequal discipline, procedural irregularities, the EEOC's reasonable-cause determination, and the Personnel Appeal Board's recommendation that Plaintiff's termination be rescinded. ECF No. [79] at 2.[13]

Defendant replies that Plaintiff fails to offer any evidence that Defendant took employment actions because of any protected activity. ECF No. [83] at 8. Plaintiff's Response does not acknowledge that the chronology of her complaints and adverse employment actions negate any causal connection. *Id.* That is true where most of the charges were filed before Defendant initiated discipline against her, negating any causal nexus. *Id.*

"In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in

[13] Plaintiff argues that circumstantial evidence supports finding that she faced adverse employment actions and termination because of discrimination based on her national origin *and* in retaliation for filing EEOC Charges. A plaintiff is free to argue multiple motivations behind adverse employment actions at summary judgment. *See Smitherman v. Decatur Plastics Prods., Inc.*, No. 4:15-CV-1576-JEO, 2017 WL 3668176, at *8 (N.D. Ala. Aug. 24, 2017), *aff'd sub nom. Smitherman v. Decatur Plastics Prods. Inc*, 735 F. App'x 692 (11th Cir. 2018) ("[W]hile a plaintiff may *recover* only once for a given adverse action, [he or] she may assert different prohibited motives for it, and . . . the court is to analyze each claim independently under the applicable causation standard to assess whether sufficient evidence supports that the associated prohibited animus motivated the employer.").

the protected activity and the adverse employment decision." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id.* at 587 (internal quotations omitted). "If the plaintiff can establish a *prima facie* case, she is entitled to a rebuttable presumption of illicit intent." *Ismael*, 161 F.4th at 764. A plaintiff can also survive summary judgment without establishing a *prima facie* case of retaliation by showing a "convincing mosaic" of circumstantial evidence. *Id.* at 760 ("We have applied [the 'convincing mosaic standard'] in equal measure to claims of discrimination and retaliation.").

Unlike discrimination claims, a retaliation claim must show that a plaintiff's "protected activity was a but-for cause of the alleged adverse action." *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "The but-for standard asks whether a particular outcome would not have happened but for the purported cause." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023) (internal citations and quotations omitted). "Stated another way, a plaintiff must prove that had she not complained, she would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). The Eleventh Circuit has held that "causation is met if there is sufficient evidence the decisionmaker was aware of the employee's protected conduct and there was a close temporal proximity between the employer's awareness and the adverse action." *Byrd v. Austal USA, LLC*, No. 25-13131, 2026 WL 1898261, at *6 (11th Cir. July 1, 2026) (citing *Berry v. Crestwood Healthcare, LP*, 84 F.4th 1300, 1309 (11th Cir. 2023)). "[I]f the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected." *Decoste v. City of Boynton Beach*, 818 F. Supp. 3d 1360, 1383–84 (S.D. Fla. 2026), *appeal dismissed*, No. 26-10632, 2026 WL 1907401 (11th Cir. July 2, 2026)

(citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006) ("When an employer contemplates a given action before the harassment takes place, temporal proximity between the action and the incident of harassment alone will not suffice to show causation.")).

The Court assesses Plaintiff's retaliation claim using the same framework the Eleventh Circuit outlined in *Ismael.* Because Plaintiff does not argue she has established a *prima facie* case of retaliation, she is not entitled to a rebuttable presumption of illicit intent. The Court analyzes whether Plaintiff has proffered evidence that would permit a reasonable juror to infer that retaliation was a but-for cause of Defendant's adverse actions.

**1. Timeline of Protected Activity and Adverse Employment Actions**

As an initial matter, the Court clarifies the timeline of Plaintiff's protected activity and adverse employment actions. The record indicates that Plaintiff filed four Charges: on April 5, 2021; November 2, 2021; November 14, 2022; and October 28, 2024. The Court's Order on Motion to Dismiss Second Amended Complaint concluded that "Plaintiff cannot establish a causal connection between her November 12, 2022 Charge and adverse employment actions. The denial of her training request, failure to recognize her at a ceremony, and issuing a Notice of Intent to Terminate occurred *before* she filed the November 2022 Charge. Although Plaintiff was terminated after filing that Charge, the Notice of Intent to Terminate was issued before the Charge, which does not support causation." ECF No. [84] at 14-15. That conclusion similarly applies to the October 2024 Charge.

Therefore, the Court only considers the adverse employment actions that occurred *after* protected activity. The record includes disciplinary actions that occurred after the April 2021 Charge and the November 2, 2021 Charge. The following timeline is relevant to those Charges:

- On April 5, 2021, Plaintiff filed her first Charge;

- On August 17, 2021, Plaintiff was sent home for 24 hours without pay regarding Commander Horn's directives regarding VOCA invoices;

- On September 8, 2021, Chief Juriga issued a Notice of Intent to Discipline Plaintiff regarding the events of August 17, 2021, consisting of a written reprimand and a 32-hour suspension without pay;

- On September 28, 2021, Plaintiff received a Notice of Disciplinary Action, receiving an 80-hour suspension for unauthorized release of confidential information and for interfering with an ongoing investigation, IA Investigation 21-05;

- On November 2, 2021, Plaintiff filed her second Charge;

- On April 7, 2022, Defendant issued a Notice of Intent to Discipline Plaintiff regarding the NoMi Angels event and Plaintiff's response, specifically a 32-hour suspension without pay and a deduction of 40 hours from her vacation bank; and

- On April 8, 2022, Defendant Issued a Notice of Intent to Terminate Plaintiff's Employment.

The record evidence shows that Plaintiff received disciplinary actions four to six months after filing her April 2021 Charge and five months after filing her November 2021 Charge. Contrary to Defendant's argument, the time between the protected activity and disciplinary actions is not so tenuous as to negate causation at summary judgment. The Eleventh Circuit has held that when a plaintiff seeks to establish causation in her *prima facie* case solely through temporal proximity, the time between the protected activity and the adverse employment action must be "very close." *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). As a matter of law, a period of three to four months does not establish causation. *Id.* ("A three-to-four-month disparity between the statutorily protected expression and the adverse employment action is not enough. . . . Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."). However, Plaintiff does not purport to establish a *prima facie*

case of retaliation, nor does she argue causation by temporal proximity alone. Therefore, four to six months elapsing between protected activity and disciplinary action does not negate causation at this stage. Rather, Plaintiff argues the mosaic of circumstantial evidence supports an inference that Plaintiff's disciplinary actions were in retaliation for filing her Charges.

**2. Convincing Mosaic**

To support the mosaic that the above disciplinary actions were made in retaliation for Plaintiff's April 2021 and November 2021 Charges, Plaintiff points to evidence that she had a long, positive work history, ECF No. [78-4]; Commander Horn issued directives and was involved in meetings that led to disciplinary actions on the basis of Plaintiff's insubordination, ECF No. [72] ¶¶ 30-33; 36, 45-53; the Personnel Appeal Board rejected Defendant's justification of insubordination for her disciplinary actions and termination, ECF No. [73-16]; and Plaintiff's superiors—including Commander Horn and Police Chief Juriga—had knowledge that Plaintiff filed her EEOC Charges, ECF No. [73] at 170-74.[14]

While Plaintiff points to the same mosaic the Court found sufficient in her discrimination claim, the Court concludes that Plaintiff has not presented a convincing mosaic of circumstantial evidence such that a reasonable jury could infer retaliation.[15] Although circumstantial evidence supports an inference that Defendant's insubordination rationale was pretext, Plaintiff does not point to evidence that shows that her superiors had knowledge of her Charges prior to the disciplinary actions and that she would not have faced discipline but-for those Charges.

---

[14] Plaintiff's responsive materials do not point to facts or evidence regarding knowledge that Plaintiff filed EEOC Charges, but Plaintiff testified in her deposition that her superiors knew she had filed Charges.

[15] Such a conclusion follows from the different standards that apply in discrimination and retaliation claims and that some facts that Plaintiff identifies speak to discrimination based on national origin but not to retaliation.

Plaintiff testified that her supervisors, including Commander Horn, knew she filed Charges. ECF No. [73] at 170-74. However, Plaintiff's testimony is that it is the City's policy for every supervisor to be made aware of what occurred after a claim is filed and thus, her supervisors knew of her filings. *Id*. Plaintiff does not testify that she has personal knowledge that Commander Horn, Police Chief Juriga, or her other supervisors actually had knowledge that she filed her EEOC Charges nor does she point to any evidence to establish the date by which any of her supervisors may have learned that information such that a jury could infer that the adverse employment decisions were made with the knowledge of and because of Plaintiff's Charges. Plaintiff must present more than a scintilla of evidence to support her position. *See Liberty Lobby, Inc.*, 477 U.S. at 252. She has not done so.

Therefore, Plaintiff has not presented a convincing mosaic of circumstantial evidence such that a reasonable jury could infer that Plaintiff would not have been disciplined or terminated but for her protected activity. Summary judgment is granted as to Count II.

**C. Count III—Hostile Work Environment**

Defendant argues that Plaintiff cannot establish a hostile work environment because Plaintiff cannot show that any alleged harassment was based on her protected class and that any harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment. ECF No. [71] at 9. The instances Plaintiff identifies as harassment—Commander Horn's conduct, Detective Bonny's comment, exclusion from the department recognition ceremony, CST Duverseau's actions, and the February 12, 2021 incident—were not objectively hostile, were not severe or pervasive, and none of the actions were tied to her Haitian origin. *Id.* at 11. Defendant also argues that Plaintiff is procedurally barred from raising the February 12, 2021 incident because Plaintiff raised that allegation in her April 2021 Charge but failed to file an action within 90 days of the Notice of Right to Sue. *Id.* at 14.

Plaintiff's Response does not address any of Defendant's arguments regarding Plaintiff's hostile work environment claim. *See generally* ECF No. [83].

Defendant replies that Plaintiff abandons her hostile work environment claim by failing to address it in her Response. ECF No. [83] at 1. Plaintiff's arguments regarding a convincing mosaic are irrelevant to a hostile work environment claim. *Id.* at 7. Because a Court need not consider assertions made in pleadings but not in opposition to a motion for summary judgment, Plaintiff's failure to address her hostile work environment claim is fatal. *Id.* at 8.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (internal citations omitted). *See also Matthis v. Rogers et al.*, Case No. 25-14096, 2026 WL 2223734, at *4 (11th Cir. Aug. 3, 2026) (finding that plaintiff's state law claims and three § 1983 claims are "abandoned as a matter of law" because plaintiff's response to defendants' motion for summary judgment failed to respond to arguments concerning those claims); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir. 1999) (reiterating "the unremarkable position that assertions made in the pleadings (*e.g.,* complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment.").

Plaintiff does not respond to Defendant's arguments regarding her hostile work environment claim. *See generally* ECF No. [79]. Plaintiff's Response focuses on presenting a mosaic of circumstantial evidence, arguing that the record "contains ample circumstantial evidence from which a reasonable jury could find discrimination and retaliation." *Id.* at 1. However, Plaintiff's arguments regarding a convincing mosaic do not apply to Plaintiff's hostile work

environment claim because the Eleventh Circuit has not adopted the convincing mosaic theory in hostile work environment claims. *See Harris v. Pub. Health Tr. Of Miami-Dade Cnty.*, 82 F.4th 1296, 1304 n.5 (11th Cir. 2023) ("Technically, the standards applicable to Harris's employment-discrimination and hostile-work-environment claims are different. For whatever reason, [the Eleventh Circuit hasn't] applied the three traditional frameworks—direct evidence, *McDonnell Douglas*, and 'convincing mosaic'—to hostile-work-environment claims.").

Plaintiff's Response mentions workplace hostility three times: "The record includes . . . workplace hostility following internal-affairs activity . . . [;]" "The record contains evidence of workplace hostility beginning with the February 12, 2021 incident involving Detectives Kimberly Bonny and Kamesha Moffatt[;]" and "The record includes . . . evidence that Plaintiff reported hostility and intimidation after refusing to support Detective Moffatt in an Internal Affairs matter[.]" *Id.* at 2, 3, 7. None of these statements establish the elements of a hostile workplace claim[16] nor do they respond to Defendant's arguments that the specific incidents and behavior Defendant identifies in its Motion were not objectively hostile, were not sufficiently severe or pervasive, and were not based on Plaintiff's national origin. Therefore, Plaintiff has waived any argument regarding a hostile work environment. *See UBS Fin. Servs., Inc. of Puerto Rico v. Efron*, No. 23-13879, 2025 WL 1833578, at *10 (11th Cir. July 3, 2025) ("We will not consider '[a] passing reference to an issue in a brief . . . , and the failure to make arguments and

[16] "[A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). "[T]o be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Id.* at 1276 (internal quotation omitted; alterations adopted). Defendant argues Plaintiff has not established the third and fourth elements. ECF No. [71] at 9.

cite authorities in support of an issue waives it.'" (citation omitted)). Therefore, Plaintiff has abandoned her claim. Accordingly, summary judgment is granted as to Count III.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [71]**, is **GRANTED in part and DENIED in part**.
2. Defendant's Motion for Summary Judgment is **DENIED** as to **Count I**.
3. Defendant's Motion for Summary Judgment is **GRANTED** as to **Counts II and III**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 14, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record